IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
October 11, 2007 Session

## STATE OF TENNESSEE v. BILLY L. COUCH, M.D. a/k/a Dr. B. L. COUCH, ET AL.

### Direct Appeal from the Circuit Court for Gibson County
No. H3536    Clayburn Peeples, Judge

---

### No. W2007-01059-COA-R3-CV  -  Filed December 7, 2007

---

Defendant doctor appeals an award of summary judgment to the State in this action brought pursuant to the Tennessee Consumer Protection Act (TCPA) in connection with the sale and administration of flu vaccine. The trial court found the defendant doctor guilty of two hundred seventy (270) violations of the TCPA for vaccinating fifty-four (54) patients with serum manufactured for the previous flu season while representing it would protect them in the upcoming flu season; awarded restitution to the patients, imposed a civil penalty of $50 per violation, and awarded $10,500 in attorney's fees and costs for investigation; and issued permanent injunction prohibiting doctor from selling or administering a flu vaccine manufactured for a previous flu season. On appeal, defendant doctor contends he established that two material facts were in dispute. We affirm.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed; and Remanded

DAVID R. FARMER, J., delivered the opinion of the court, in which ALAN E. HIGHERS, P.J., W.S., and HOLLY M. KIRBY, J., joined.

Harold R. Gunn, Humboldt, Tennessee, for the appellant, Billy L. Couch, M.D.

Robert E. Cooper, Jr., Attorney General and Reporter, and Brant Harrell, Assistant Attorney General, for the appellee, State of Tennessee.

### OPINION

Relying on the provisions of the Tennessee Consumer Protection Act (TCPA), the State of Tennessee filed suit against Billy L. Couch, M.D. (Dr. Couch) and his assistant, Frances Bailey (Ms. Bailey), on February 10, 2005. It alleged TCPA violations in connection with Dr. Couch's sale and administration of a vaccine manufactured for the 2003-2004 flu season between August and November of 2004. Dr. Couch vaccinated as many as seventy-two (72) individuals during that

period of time, and between fifty-four (54) and sixty (60) of those vaccinated had purchased the vaccination for themselves or had it purchased for them.

In January of 2006, the State moved for summary judgment against Dr. Couch, who generally denied the facts enumerated in the State's attached list of material facts. Along with its motion for summary judgment and its memorandum in support of the motion, the State included ten attachments: the State's Request for Admissions in the instant suit, the transcript from a hearing before the Board of Medical Examiners,[1] the State's Request for Admissions from the Board of Medical Examiners proceedings, two affidavits of employees from flu vaccine manufacturers, affidavits from two of Dr. Couch's patients, the product insert for the vaccine administered by Dr. Couch, the State's interrogatories from the instant suit and from the Board of Medical Examiners proceedings, and, finally, the State's "Separate Concise Statement of Material Facts." The State supported its factual assertions with citations to these materials. In response, as noted below, Dr. Couch relied upon general denials or upon statements that were unresponsive to their corresponding allegations.

The trial court conducted a summary judgment hearing on May 15, 2006, and a hearing on monetary relief on July 17, 2006. The first hearing addressed the issue of liability. In that hearing, Dr. Couch argued that the State's case turned on whether or not the vaccine had expired, but that it had not proven that fact. The State argued that the fact of expiration was not material to its case because even negligent misrepresentations could constitute TCPA violations. After finding that Dr. Couch had violated the TCPA, the court directed the parties to attempt to reach an agreement on monetary relief. Because the parties could not do so, the trial court conducted a hearing on the matter on July 17, 2006.

On July 28, 2006, the trial court entered findings of fact, conclusions of law, and an order granting summary judgment in favor of the State and finding Dr. Couch guilty of two hundred seventy (270) violations[2] of the TCPA; awarding restitution to consumers, imposing a civil penalty of $50 per violation, and awarding $10,500 in attorney's fees and costs for investigation; and permanently enjoining Dr. Couch from selling or administering a flu vaccine manufactured for a previous flu season.

In its written findings of fact and conclusions of law, the trial court expressly found the following facts: that the flu season runs from the Fall of one year through the Spring of the next year; that flu vaccine for a current season is usually administered during the first part of the flu season in the Fall but can be administered anytime during the season which, in the case of the subject

---

[1] During the discovery phase of this suit, Dr. Couch also appeared and testified in a separate proceeding before the Tennessee Board of Medical Examiners regarding these vaccinations.

[2] The record reveals that the trial court considered each administration of the vaccine to constitute five separate violations of the TCPA. Even though Dr. Couch administered fifty-four (54) vaccinations subject to the strictures of the TCPA, the trial court penalized him for two hundred seventy (270) independent violations of the TCPA. Dr. Couch does not raise this issue on appeal, so we decline to address it here.

vaccine, lasted from Fall of 2003 through Spring of 2004; that Dr. Couch had administered a flu vaccine manufactured for the 2003-2004 flu season to seventy-two (72) individuals between August 2004 and November 2004; that Dr. Couch received payment for vaccinating at least fifty four (54) of those individuals; that the flu vaccine administered by Dr. Couch did not protect against new flu strains likely to surface in the upcoming 2004-2005 flu season; and that Dr. Couch did not disclose to his patients the fact that the subject vaccine would not protect against the strains anticipated to appear in the 2004-2005 season. The trial court concluded:

> Based upon a review of the record and information presented to this Court, Defendant Dr. Couch's misrepresentations, silence or omissions relating to administering a prior season's flu vaccine, violated five (5) provisions of the TCPA with each individual person who paid for the flu vaccine manufactured for the 2003/2004 flu seasons for a total of two hundred and seventy (270) separate violations of the TCPA.

Dr. Couch sought an appeal but was at first unsuccessful, in part, because the order did not adjudicate the State's claim against Ms. Bailey. Following entry of the voluntary dismissal of the State's claims against Ms. Bailey, Dr. Couch then pursued this appeal.

### Issues Presented

On appeal, Dr. Couch presents the following issues for our review:

(1)     Plaintiff contends defendant represented flu vaccine as being for the 2004-2005 flu season. This was denied in the Answers to the Complaint stating that he gave vaccine for the 2003-2004 flu season in 2004. . . .   Did the Judge err in stating that [this fact] was undisputable?

(2)     Plaintiffs contend that the flu vaccine had an expiration date of June 2004. Defendant demanded strict proof of this since the box and [vial] state "flu season 2003-2004" without any expiration date. . . . Did the Judge err in stating that this fact was undisputable?

### Standard of Review

We review an award of summary judgment *de novo*, with no presumption of correctness afforded to the conclusions of the trial court. *Guy v. Mut. of Omaha Ins. Co.*, 79 S.W.3d 528, 534 (Tenn. 2002). An award of summary judgment is appropriate if

> the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

-3-

Tenn. R. Civ. P. 56.04. The party moving for summary judgment must provide a separate statement of the undisputed material facts upon which it relies, and a supporting citation to the record must accompany each fact. Tenn. R. Civ. P. 56.03. When a party has submitted a properly supported motion for summary judgment, the burden shifts to the nonmoving party to establish the existence of disputed material facts. *McCarley v. West Quality Food Serv.*, 960 S.W.2d 585, 588 (Tenn. 1998).

The party opposing the motion must file a response addressing each fact and either agree that the fact is undisputed[3] or demonstrate that it is in dispute. Tenn. R. Civ. P. 56.03. To demonstrate a dispute, the non-movant must cite to support in the record. *Id.* Further, if the moving party has supported its motion for summary judgment with affidavits, the non-movant

> may not rest upon the mere allegations or denials of [its] pleading, but his or her response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the [non-movant] does not so respond, summary judgment, if appropriate, shall be entered against the [non-movant].

Tenn. R. Civ. P. 56.06. The material facts set forth in the statement of the moving party may be deemed admitted if the opposing party has failed to controvert them in a responsive statement. *See* Robert Banks, Jr. & June F. Entman, Tennessee Civil Procedure, § 9-4(i) (2d ed. 2004)(quoting *Midwest Imports, Ltd. v. Coval*, 71 F.3d 1311, 1313 n.1 (7th Cir. 1995)).

In determining whether to award summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Staples v. CBL & Assocs.*, 15 S.W.3d 83, 89 (Tenn. 2000). The court should award summary judgment only when a reasonable person could reach only one conclusion based on the facts and the inferences drawn from those facts. *Id.* Summary judgment is not appropriate if there is any doubt about whether a genuine issue of material fact exists. *McCarley*, 960 S.W.2d at 588.

### *Analysis*

On appeal, Dr. Couch limits his challenge of the trial court's judgment to two points. He contends that he demonstrated a genuine dispute regarding the following two facts: that he represented the flu vaccine as being for the 2004-2005 flu season, and that the flu vaccine had an expiration date of June 2004.

---

[3]The non-movant's response may state that the fact is undisputed or concede thus only for the limited purpose of summary judgment. Tenn. R. Civ. P. 56.03.

### *Dr. Couch's Representations*

Dr. Couch first argues that he successfully disputed the State's allegation that he represented to his patients that the flu vaccine was for the 2004-2005 flu season. In its order, the trial court found that Dr. Couch failed to disclose to his patients that the vaccine he was administering would not protect against the strains anticipated to appear in the 2004-2005 season. It concluded that his "misrepresentations, silence or omissions relating to administering a prior season's flu vaccine, violated . . . the TCPA."

We look first to four (4) pertinent allegations, represented below in italics, set forth in the State's statement of material facts to determine if it met its burden in showing that Dr. Couch had misrepresented, either affirmatively or by omission, the efficacy of the serum he administered to his patients. We then turn to Dr. Couch's response to each allegation to determine if he sufficiently controverted it.

> State's Material Fact #1: *Dr. Couch did not tell at least half of the . . . patients to whom he administered flu vaccine to in the early to late fall of 2004 that he was giving them the 2003/2004 vaccine.*

The State supported this allegation by citing to Dr. Couch's own testimony before the Board of Medical Examiners. In that proceeding, when asked if he told "all of the patients who received this vaccine that it was the 2003/2004," Dr. Couch replied as follows:

> Only if they asked. Not all of them asked. I would say probably about half of them asked and the others didn't seem to care one way or the other.

In response to this factual allegation on summary judgment, Dr. Couch merely replied, "Denies; since I gave the shots in the 2004 year as set forth on the vaccine."

> State's Material Fact #2: *Dr. Couch told the customers who asked him either that the vaccine was the "2003/2004" without any further explanation, that "it was still good" through the duration of the calendar year 2004, or that the Fall of 2004 was included in the 2003/2004 flu season. He told customers this only if the customer asked about the 2003/2004 labeling.*

To support this fact, the State cited first to the affidavit of a patient, "N.R.," who stated as follows:

> I asked Dr. Couch if this vaccine covered the new strains of the flu. He informed me that the vaccine was good through 2004.

Additionally, the State relied on the portion of Dr. Couch's Board of Medical Examiners testimony noted above. To controvert the State's allegation on summary judgment, Dr. Couch responded as

follows: "Denies; Affidavit of [N.R.] is denied in that there was no expiration date on the box or vaccine bottle."

> State's Material Fact #3: [A]ll consumers, even those who asked about the 2003/2004 label, were not told that it was created for the previous year's flu season which ended several months before, in the Spring, and was not formulated for the strains likely to surface in the 2004/2005 flu season.

The State cited, again, to Dr. Couch's own testimony in support of this fact. At the proceeding before the Board of Medical Examiners, when asked whether he explained to "all of these patients that the vaccine they were receiving was designed for the 2003/2004 flu season and not for the 2004/2005 flu season and what that meant," Dr. Couch responded that he "didn't explain to them anything." Further, when asked if he felt it would have been proper to inform his patients that the serum was not "recommended for this year[, that] this is last year's vaccine[, that this serum] is what they thought would be okay for last year according to the strains of virus that they thought were going to hit . . . last year," Dr. Couch responded, "Yes, sir. I guess it would have been."

In his response to the State's motion for summary judgment, Dr. Couch countered this factual allegation with "Denies."

> State's Material Fact #4: *[O]n at least one occasion Dr. Couch expressly represented that the flu shot for the 2003/2004 season would protect against the flu strains circulating during the 2004/2005 flu season.*

The State supported this fact by citing to the affidavit of "N.R.," in which the patient stated that when she asked Dr. Couch if the vaccine would protect against the new flu strains, he responded that the vaccine was good through 2004. Dr. Couch attempted to controvert this allegation in his response to the State's motion for summary judgment in the following manner: "Denies; The vaccine was good through 2004; the affidavit is denied."

The State sufficiently supported each of the above allegations. Dr. Couch, on the other hand, failed to controvert them because he merely issued general denials or gave unresponsive explanations to well-supported statements. When viewed together, these facts amply support the trial court's findings regarding Dr. Couch's omissions and misrepresentations regarding the subject flu vaccine. We find no error in the trial court's determination that these facts were undisputed.

### *Expiration Date of the Vaccine*

In raising the issue of the vaccine's expiration date on appeal, Dr. Couch contends that the trial court erred in finding that the serum had an expiration date of June 2004. This argument lacks merit for two fundamental reasons. First, nowhere in the trial court's findings or order is an expiration date mentioned. We cannot find error in a factual finding the trial court never made. Second, the expiration date of the serum is immaterial to the State's case and to the trial court's

judgment.  The gravamen of the State's claim is that Dr. Couch's representations, omissions, and/or actions misled his patients to believe that the vaccinations would protect them against the new flu strains likely to surface in the upcoming flu season.  Even assuming the serum had not expired at the time Dr. Couch vaccinated these patients, the State's case and the trial court's judgment would remain unaffected.   We cannot concur in Dr. Couch's conclusions on this point.

     For the foregoing reasons, we affirm the trial court's judgment.  Costs of this appeal are taxed to Billy L. Couch, M.D., and his surety, for which execution shall issue if necessary.


                                     _____
                                     DAVID R. FARMER, JUDGE